UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DANIEL HUTCHINS,

        Plaintiff,               Case No. 2:25-cv-51

v.                                 Honorable Maarten Vermaat

DOUG ETALAMAKI,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's First Amendment retaliation claim premised upon his conduct in assisting Prisoner Nelson in filing a lawsuit, including Defendant Etalamaki's order that Plaintiff return to his cell, and Plaintiff's Eighth and Fourteenth Amendment claims.

Plaintiff's First Amendment retaliation claim concerning the misconduct charge for disobeying a direct order remains in the case.

## Discussion

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

about which he complains occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MBP Corrections Officer Doug Etalamaki in his individual capacity. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that, in November 2024, Plaintiff assisted his cellmate, Dylan Nelson, in filing a civil rights complaint. (*Id.*, PageID.3.) Between November and December 2024, Plaintiff and Nelson were approached by "gang members" who asked Plaintiff and Nelson to smuggle drugs. (*Id.*) Plaintiff and Nelson refused. (*Id.*) Plaintiff "reported this issue to various staff at MBP and internal affairs;" however, "[n]o meaningful action was taken . . . ." (*Id.*)

On or about December 17, 2024, Defendant Etalamaki asked Plaintiff, "Did you help that mother****** file the lawsuit against me?" (*Id.*, PageID.4 (asterisks added).) Plaintiff responded, "That's a private matter." (*Id.*) Defendant Etalamaki then stated, "It will be very private when I throw your a** in the hole." (*Id.* (asterisks added).)

On or about December 31, 2024, the gang members assaulted Prisoner Nelson and threatened to stab Plaintiff. (*Id.*) That same day, Plaintiff reported the threat to Defendant Etalamaki, who replied, "I don't give a f*** if you get stabbed. Maybe that will teach you not to file lawsuits." (*Id.* (asterisks added).) Defendant Etalamaki then ordered Plaintiff to return to his cell; however, Plaintiff refused, stating, "I can't do it, I'll be stabbed. And now I'm filing a grievance against you too." (*Id.*) Defendant Etalamaki became angry and responded, "Fine, I'll just put you're a** in seg, and when you get out hopefully they will stab you." (*Id.* (asterisks added).) Defendant Etalamaki placed Plaintiff in segregation and issued Plaintiff a misconduct charge for disobeying a direct order. (*Id.*) On January 9, 2024, Plaintiff was found not guilty of the misconduct charge. (*Id.*, PageID.5.)

Plaintiff states that he is bringing claims against Defendant Etalamaki for First Amendment retaliation for falsifying a misconduct report and attempting to force Plaintiff to return to his cell, and Eighth Amendment deliberate indifference to Plaintiff's safety. (*Id.*) The Court will also liberally construe Plaintiff's complaint as raising a Fourteenth Amendment due process claim related to the false misconduct. Plaintiff seeks monetary relief. (*Id.*, PageID.6.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Claims

Plaintiff alleges that Defendant Etalamaki retaliated against Plaintiff in violation of Plaintiff's First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1.     Protected Conduct

Plaintiff appears to allege two instances of protected conduct. First, Plaintiff claims that he assisted Prisoner Nelson in filing a lawsuit against Defendant Etalamaki, and second, Plaintiff claims that he told Defendant Etalamaki that he would be filing a grievance.

"While a prisoner has a First Amendment right to file grievances against prison officials on his own behalf, 'an inmate does not have an independent right to help other prisoners with their

legal claims.'" *King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005) (quoting *Thaddeus–X,* 175 F.3d at 395). Therefore, assisting another prisoner in filing a lawsuit is not protected activity within the meaning of the First Amendment unless the plaintiff alleges sufficient facts that would plausibly suggest that "his assistance is *necessary* to provide another inmate with constitutionally-protected access to the courts." *Id.*. (emphasis in original).

Here, Plaintiff has not alleged any facts from which this Court could infer that Plaintiff's assistance was necessary to ensure Prisoner Nelson's access to the Courts. Therefore, Plaintiff's First Amendment retaliation claim premised upon Plaintiff's actions in assisting Prisoner Nelson in filing a lawsuit will be dismissed. *See Hermansen v. Kentucky Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014) (affirming the dismissal of the plaintiff's retaliation claim for failure to state a claim where the plaintiff complaint alleged that he was assisting another inmate in filing a grievance at the time of this transfer but the plaintiff failed to adequately allege that the other inmate was "incapable of pursing his own grievance and had no other source of help.")

However, it is well-established that an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Therefore, at this stage of the proceedings, the Court finds that Plaintiff engaged in First Amendment protected conduct when Plaintiff told Defendant Etalamaki that he would be filing a grievance against Defendant Etalamaki.

### 2. Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising

7

his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Plaintiff points to two allegedly adverse actions: (1) attempting to force Plaintiff to return to his cell despite the threats from the gang members, and (2) issuing Plaintiff a misconduct charge for disobeying a direct order.

Plaintiff cannot allege facts that would plausibly suggest that Defendant Etalamaki's order that Plaintiff return to his cell was motivated by Plaintiff's protected conduct in threatening to file a grievance because the order that Plaintiff return to his cell *preceded*—and indeed, prompted—Plaintiff's threat to file a grievance. Plaintiff's first retaliation claim premised on Defendant Etalamaki's order that Plaintiff return to his cell will, therefore, be dismissed.

However, taking Plaintiff's allegations as true as is required at this stage, Plaintiff has alleged sufficient facts to suggest that Defendant Etalamaki's action in issuing a misconduct charge against Plaintiff was motivated, at least in part, by Plaintiff's threat to file a grievance against Defendant Etalamaki. As a result, Plaintiff's second retaliation claim will not be dismissed on screening.

### B. Eighth Amendment Claim

Plaintiff alleges that Defendant Etalamaki was "deliberately indifferent to Plaintiff's safety needs knowing Plaintiff would be seriously injured if Plaintiff returned to Plaintiff's cell." (ECF No. 1, PageID.5.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or

9

safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

However, in *Wilson v. Yaklich*, 148 F.3d 596 (6th Cir. 1998), the Sixth Circuit explained that no Eighth Amendment claim exists for deliberate indifference to the threat of harm where no physical harm actually occurred. *Id.* at 601. In *Wilson,* the plaintiff alleged that he received threats from a prison gang and that prison officials failed to take action to protect him. *Id.* at 600. The Court affirmed the district court's dismissal of the plaintiff's Eighth Amendment claim for compensatory and punitive damages as frivolous, explaining:

> Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners. As the Supreme Court noted in *Farmer v. Brennan,* 511 U.S. 825, 833 (1994), "[h]aving incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." (Internal quotation marks and citations omitted.)
>
> Nevertheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment. Instead, the deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities,'" *id.* at 834 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)), and, in prison condition cases such as the one presently before the court, the prison officials must exhibit deliberate indifference to the health or safety of the inmate. *Id.* Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence. Wilson has completely failed to do so in this case.
>
> \*   \*   \*
>
> Even if he had claimed a non-physical injury such as fear of assault at the hands of the prison gang, however, monetary damages for such alleged harm would not have been appropriate in *this* Eighth Amendment context. The Supreme Court itself has noted that "*extreme* deprivations are required to make out a conditions-of-confinement claim," *Hudson v. McMillian,* 503 U.S. 1, 9 (1992*)* (emphasis added),

10

as opposed to an excessive force claim. No such egregious failures on the part of prison officials have been established here. Also, as the Seventh Circuit recently concluded in *Babcock v. White,* 102 F.3d 267, 272 (7th Cir.1996):

> However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment. [A] claim of psychological injury does not reflect the deprivation of "the minimal civilized measures of life's necessities," *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981), that is the touchstone of a conditions-of-confinement case. Simply put, [the plaintiff] alleges, not a "failure to prevent harm," *Farmer,* 511 U.S. [at 834] . . ., but a failure to prevent exposure to risk of harm. This does not entitle [the plaintiff] to monetary compensation. *See Carey,* 435 U.S. 247, 258–59 ("In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.").

*Wilson*, 148 F.3d at 600–01; *see also Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where the plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *White v. Trayser*, No. 10-cv-11397, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (holding that the plaintiff failed to state an Eighth Amendment claim where he alleged that the defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury).

Here too, Plaintiff alleges that he feared assault but does not allege that those threats came to fruition or that he otherwise suffered any actual harm as a result of the threats from the "gang members." Accordingly, in keeping with the foregoing precedent, Plaintiff cannot maintain a claim for deliberate indifference based upon the fear of assault. The Court will dismiss Plaintiff's Eighth Amendment claim.

### C. Fourteenth Amendment Claim

Although Plaintiff does not invoke the protection of the Fourteenth Amendment, the facts Plaintiff has alleged might be construed as an attempt to assert Fourteenth Amendment due process claims premised upon the misconduct report charging Plaintiff with disobeying a direct order. Plaintiff alleges that he was ultimately found not guilty.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

There is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed"). Plaintiff had that

opportunity and succeeded in convincing the hearing officer of his position. Accordingly, any intended procedural due process claim based upon that misconduct charge will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines Plaintiff's First Amendment retaliation claim premised upon his conduct in assisting Prisoner Nelson in filing a lawsuit, including Defendant Etalamaki's order that Plaintiff return to his cell, and Plaintiff's Eighth and Fourteenth Amendment claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Plaintiff's First Amendment retaliation claim against Defendant Etalamaki concerning the misconduct charge for disobeying a direct order remains in the case.

An order consistent with this opinion will be entered.


Dated:   April 29, 2025                                    /s/ *Maarten Vermaat*
                                                                             Maarten Vermaat
                                                                             United States Magistrate Judge